First case for argument this morning is 14-1143 Z Produx, Inc. v. Make-Up Art Cosmetics. Mr. Katz, whenever you're ready. Good morning, Your Honors. Robert Katz with Plaintiff Appellant Z Produx, Inc. Our brief is broken down into two parts. The first is the District Court's claim construction and the second is the District Court's infringement. I'll go ahead and start with the claim construction. The District Court provided a claim construction that only included three parts, a lift, a hinge, and the overall proportions of the design. In effect, the claim construction eviscerated the overall visual impression of the design for the cosmetics palette. In doing so, the Court inappropriately factored out most of the design aspects of the Z Produx's design. The construction was not adapted to a pictorial setting as required by Egyptian Goddess and Richardson. The construction also distorted the infringement analysis by preventing consideration of the design as a whole by the ordinary observer. Can I ask you, I mean, I appreciate your arguments and I know you've laid them out in your briefs, but if we can just go a little bit in a different direction, and that is, under Egyptian Goddess, this inquiry is supposed to be in the context of the prior art design. And so, leaving aside your particular arguments, isn't it fair to say that the accused device is more similar to the prior art line, or whatever you call it, than to your design? And isn't that something that one can look at and say that's very probative in terms of what we should do? And for example, one of the issues you really spend a lot of time on, which is the clear window, a clear cover, and whether or not that's functional or not, that was also in the prior art, right? So doesn't that factor in, in terms of a conclusion of summary judgment of non-infringement, that is, the similarity between the prior art? Yes. In keeping with Egyptian Goddess, which looks to the ordinary observer, the ordinary observer is supposed to be informed by the prior art. So in that context, if we could look for a moment at the ordinary observer, or perhaps the ordinary purchaser of a cosmetics palette, that ordinary purchaser is not only informed by a particular design patent, for instance, found in the PTO's database. A hypothetical purchaser of a cosmetics palette might be a 19-year-old woman who has seen many different cosmetics palettes at the mall or online, and is not only informed by, say, a particular design patent. Now we laid out, beginning at A726 in the appendix, a lot of the prior art. And all the prior art that we laid out, it was very cluttered. It looked very much different from the Z products design. The Z products design, the overall visual impression of that product was it's very clean, it's very uncluttered, it's got relatively straight lines. What about the Leiden prior art? I mean, it looks like it's a box with a window. It doesn't look all that cluttered. I know it doesn't have an empty base, but at least with regards to the window, it looks pretty much like your product and like the MAC product. The Leiden prior art certainly has some similarities. It does look much different in that the Leiden prior art has a large window on the front that exposes all of these dividers on the inside. So the dividers are very apparent to the potential purchaser. To the ordinary observer, it's quite clear that it's not this clean, monolithic look that is the Z products design. But if you're looking at the clear cover, and I know we're going to look at this design in its entirety, but that aspect of it is present in the prior art, the clear window. The clear window appears in the Leiden patent, that's correct, yes. And also there's more of the window in the Leiden or Linden. In any event, it's larger than in the claimed design, and that is closer, as the Chief Judge said, to the accused. In other words, the larger window is common to both Linden and the accused and differs from the claimed. The proportions of the window to the outside frame are different between what's in the claimed patent and the accused product. That's correct. I think the important question though is, is that difference going to be perceptible to the ordinary observer in light of all the other differences? If I can analogize this, the field of cosmetics palettes is pretty limited. Something that's more ubiquitous would be, say, cell phones. If we looked at cell phones 10 years ago, and you look at one, it's loaded with buttons. It's a very cluttered look. It's got buttons everywhere. And then a few years ago, a manufacturer came out with a very clear, monolithic, flat phone, and that was clearly different from all the prior art. So an ordinary observer would, in terms of the overall visual impression, he would probably be taken by the clean, uncluttered look of this phone. If an infringer came out 60 days later and came out with a similar looking phone but just changed up some proportions or changed up some edges, the ordinary observer would likely see that it's the same uncluttered look, and that's the novel aspect of the invention. Well, if you're talking about that, then it seems you're focusing on the face without dividers, not the clear window. And the district court found that was functional. So if we agree with that, how does that affect your argument? I understand you don't agree with that. I'm sorry, I'm asking a very rambling question. The window is clear. The prior art has a clear window. What you seem to be getting at in terms of these clean lines is when you look at it, there's no holders and the makeup's not there and things like that. But the form or the structuralist base seems functional, not ornamental. The overall visual impression of Leiden, as you look at it, it has a cluttered appearance because of all the dividers that are clearly visible through the transparent window. So the overall visual impression on that product is going to be cluttered. It's not going to be the clean, uncluttered look of the Z product's design. Well, I guess I know we may be going around in circles here. But just following on Judge Hughes' question, it seemed to me, though, that a lot of your argument had to do with the clear window and not the clear window. And whether or not a lot of your argument about why the district court erred was because he factored out the clear window. So with regard to at least that factor, I guess we're all kind of wondering about the significance of that, given that if you're talking about just the clear window, that clear window exists in the prior art. I don't know if I'm being clear, but do you understand the question, the difficulty we're having here? And we're not making a claim to the general configuration of a cosmetics palette that uses a transparent aspect in the upper lid. That's a functional part that allows the user to see the contents of the palette. However, here— And that's what the district court said, right? But there's a big difference between the general configuration of using some sort of a transparent aspect and then making particular design decisions based on that. Now, a transparent aspect could be something like an upper lid that's completely transparent, like a clear plastic lid. That's a design choice. Another design choice might be a rectangle with rounded corners.  So where one has functionally equivalent design choices to make, then yes, the design aspect of using a rectangular window should be protectable. So what was the error that you're alleging the district court made, if you agree that the fact of the clear window is a functional characteristic? So what is it, in your view, that he should have looked at and did not with respect to this clear window? With respect to the claim construction, the claim construction doesn't mirror the inventive aspect of the device. Well, sure. I mean, the district court didn't talk about the rectangle window in the claim construction. So that seems a little problematic to me. But in terms of looking at infringement, he certainly did. He looked at your rectangle and the shape and size of your rectangle as opposed to the MAC one, and he found the area of the window was substantially different. And so even if he should have put the notion of a rectangle in the claim construction, I don't see how that's necessarily all that harmful, when he clearly looked at and compared the two rectangles in determining that an ordinary observer wouldn't find the MAC palette to be infringing. The district court focused on three particular differences between the design and the accused product. They were the three differences that were set forth by the defendant. Well, I understand that. But, I mean, you're not telling me he didn't look at the size of the rectangles, too. I mean, that's clear in the record. He did. He did, absolutely. One thing, for instance, he did not do was to look at the overall proportions of the accused device compared with the design pattern. Those are identical. He didn't compare the overall proportions. The only proportions that he compared was the window size. That is different, but a lot of the other... Are you saying when you mean overall proportions, you mean the exact outline? If you put one of these on top of the other, they would be the same exact size? No, the proportion between the window area and the outside frame on the top lid. That was the only comparison performed in a size perspective by the district court. He does talk about different proportions, but you're saying not all the proportions? Because there are portions in his opinion where he is talking about the proportions. What we pointed out in our reply brief primarily was the idea that the ratio of the length to the width is identical between the accused product and the patented design. That proportion was not analyzed by the district court. Also, the height proportions, none of the proportions were analyzed except for the proportion that the defendant pointed out and said that was different. By only looking at the very factors that the defendant said are different. Couldn't it be inferred that he understands that some of these things are the same and what he's doing on summary judgment is pointing out, here are the four things that I think are different, and given these four differences, no reasonable observer would find infringement. But in doing that, he's given no weight to the overall... I understand what you're saying. I'm struggling with how you would ever do what you're trying to do on summary judgment. We have to use words to describe the different features, and if you look at these things separately and use the words to say the lip's different, the window size is different, that falls into what you seem to be suggesting as looking at things in isolation and saying overall. But under your position, it seems like everything would have to go to the jury and say, here's the accused device, here's the patent. You all decide. It's a question of fact. I don't want to get too much into my rebuttal time, but I don't have any problem at all with the district court factoring out particular elements that it might find are driven strictly by functionality. Is your complaint that he didn't look at this and say, well, these are the same size. They both have clear windows. They both have empty pallets, but these other four things are different enough to make them non-infringing? He didn't look at the significance. When I'm thinking about an ordinary observer, that hypothetical 19-year-old woman who goes into the mall and sees a cosmetics pallet, the distinction, it's hard to fathom that that person is going to focus on hinge and a lip, and one particular proportion between the window and the frame on the top lid. Why not? I mean, the hinge and the lip make these things look like books, don't they, as opposed to cases. Why wouldn't an ordinary observer say, this kind of looks like a book, this looks like a box? The overall visual impression of this is going to be that in light of the prior art, it's very clean and very uncluttered. Sure, but one is a clean book and one is a clean box. Isn't that still different enough, even if they both have a clean overall design? Again, it goes back to the ordinary observer. We'll restore a couple minutes for rebuttal if you need it. Thank you. Mr. Malum. May it please the Court, Tom Malum on behalf of the Affili Makeup, Art, Cosmetics, Inc. The district court decision here should be affirmed. Well, if we conclude that the district court really didn't account for the design and shape of the clear window, even if we're all in agreement that the fact that the window is clear is a functional aspect, then why don't we have to send it back, at least, for him to consider that? With respect to what, the rectangular shape? Because the design... And the proportions and what your friend said on the other side. Because the ornamental design that's been patented can be rectangular or square. That's what they have said in their papers, that's what's shown in the figures. It shows rectangles and squares as part of a single claim. So what are the ornamental elements there? It's not whether it's rectangular or square. It's whether it is book-like. It's whether it has a flat hinge. It's whether the lip extends beyond. This case has always been about those, not the proportions, but it's been about the clear top and the empty base. Because we asked them in discovery, why do we infringe? And that's what they told us. We took the deposition of the inventor and their president. They said it's because it's the same, because it has a clear top and an empty base. And as was pointed out during the argument here, Mack, my client, previously sold a product consistent with the Leiden patent, which is prior art here. The only difference between the Leiden patent, the only discernible difference between the Leiden patent, which is prior art, and the accused product is that there is no insert. It has compartments for specific makeup. Why isn't that an ornamental design element as well as a functional element? The inventor herself and the product have not disputed that there is a functional element of that. Well, I understand that. I agree with that. But it seems like there's both. And so when there's both, what do we look at in terms of whether that's something you should look at in terms of a design patent or not? Because it clearly has a functional element. You can put your own different pieces of makeup in or not. But it has a design element too, doesn't it? I would disagree that it does have a design element. And the only evidence in support of that assertion was the declaration of the inventor, Ms. Stiesel. And in that declaration she said, I made it empty so people can put in whatever they want into this box. I also appreciated the aesthetic look of it. I appreciated the aesthetic look of it. That doesn't mean that the ordinary observer would be confused into buying this product versus ours because of an aesthetic element. It's their burden to demonstrate that this is actually perceived by the ordinary user as an ornamental element as distinct from a functional element. Yeah, but we're here on summary judgment, which makes it a little different and the burden is less compelling because the inferences go to your friend. And we're dealing with an ordinary observer test which seems to be inherently kind of have aspects of a factual question in it, right? Correct, but there is a process here. We engaged in discovery. We took their deposition. We asked them, why do you have this? And they said it's because of the utilitarian aspect of it. So we moved for summary judgment. It's their burden to oppose summary judgment to demonstrate that people are actually perceiving this. An ordinary user would perceive this as an ornamental element. So what do you have to do on summary judgment? Do they have to go out and do a survey or get a questionnaire that has been presented to random people in a shopping mall? Yes, they do. They need to demonstrate that actual individuals other than the plaintiff perceive it as an aesthetic element. And they have not done that. They haven't met the burden. So you're saying in every design patent case to survive summary judgment, the plaintiffs, asserting the patent, have to go do some kind of customer survey. I think if there is a functional purpose for a design element, and they're trying to overcome that by saying, well, people are really perceiving this. The ordinary user is really perceiving this. That seems exactly backwards. It seems like on summary judgment, if you have an element that can be both functional and ornamental, then the inference has to be drawn that it's at least partly ornamental. And it's your burden to overcome on summary judgment that is purely functional. It is their burden to come forward with credible evidence. And they did not come forward with any. What is the statement of the designer that she considered that part of the benefit of this was its aesthetics enough to create a triable issue of fact? That is, as the district court concluded, that is a conclusory statement that's not supported by any fact. But who's the one designing it? I mean, she understands the whole point of this. And she also has… I mean, your argument, if you take it to its extreme, would mean that all of this stuff, none of this stuff is ornamental because they didn't get out and give any evidence of what a reasonable observer would look at. It's all about looking at the patent and saying, these are design elements. It's a cosmetic holder. It's designed to hold cosmetics. And their assertion that it's empty for a clean, uncluttered look is conclusory. And in contrast to the stated… Let's say we disagree with you on that. Where do we draw the line, though? Because there clearly is some functional aspect of this. Is there a task where we decide, well, maybe it's mostly functional or maybe it's mostly ornamental or the like? This is very fuzzy to me. Yeah, and I think it's the L.A. Gear case. And as the district court pointed out in its opinion, is the element dictated by its function? And the function here is to allow people to customize it. And they have not come forward with any articulation of how else you could do that. This seems to be another way of… If you phrase the question in a certain way, it's functional. If you phrase the question in a certain way, it's ornamental. I mean, if you think the function of this is to hold makeup, then the fact that it doesn't have dividers may be ornamental because a thing with dividers or a thing without dividers would hold makeup. But if you frame it at a lower level that it's a customizable makeup holder, then it may be more functional. I don't understand where we draw the line. Well, the claim is a cosmetic holder with the ornamental elements of. And so the purpose, as they've said, of having it be empty is so you can customize it. They want to argue that it also provides a clear look. But there's no evidence, independent evidence, to support that. This is no different than a recent decision on July 10 of this court in the Anderson v. Kimberly-Clark case. In that case, that was a motion for judgment on the pleading that a design and the accused products were not the same. And this court said, look, a conclusory assertion in the complaint even, even at the pleading stage, is not going to survive. There has to be some basis for discerning this. And that's the same thing with their assertion that this is aesthetic as opposed to functional. What is the basis for that? And there wasn't any. But even putting that aside, in light of the prior art, which is where we began on this, what are the distinctive and ornamental elements of this patented design? And there is no dispute that it has a book-like appearance. It has a lip that extends. It has a thick border. It has a flat spine. These are all elements that are set forth in the drawings. And none of those elements appear in the accused product. And so the district court was correct. Were there palettes without dividers in the prior art? That is not in the record, but I believe the Jimbo patent. But that specific patent was not in the record. Can I just go back, because we don't get design patent cases that often, so this is just really a neutral question, because I think in the prior discussion, maybe, maybe not, we've collapsed two factors. Is it your view that this ordinary observer test also goes to deciding whether these elements are functional or ornamental, or is that really a judge's job to decide? It is a judge's decision to decide. That's in the Egyptian goddess case. In the Egyptian goddess, that's what set forth the ordinary observer test. And the court said, this court said that regardless, there's still a place for claim construction in design patent cases. And the amount of detail that is put in that claim construction is up to the discretion of the court. But one area where that's going to be useful is identifying the scope of the claim. And it specifically referenced the discerning between functional and ornamental elements. And here, this case comes down to these two elements, clear top and an empty base, because those are the only two elements that have been identified as being infringed as part of the discovery when we brought our motion. And the clear top is functional, so you can see what is inside there. The empty base, again, we submitted it is functional so that you can put in whatever you like. But to get back to your question, it is for the court to decide what these elements are because the court decides what is the scope of the design patent. What test do we use to determine whether something is functional versus ornamental? This is referenced in the L.A. Gear case and the Inwood case, I believe, that's cited in the papers and the district court cited to it as well. It's whether the design is dictated by its purpose. And an example of that is two cases that are very similar. You have the Richardson v. Stanley Works case that involved the utility tool. The utility tool had a hammerhead, it had a jaw, and it had a crowbar, and it had a handle, a longer handle. And this court said those are all functional elements because they all serve a functional purpose. Now, that is not to say that there is no design element there. The curvature of the handle, that would be an example of a design element. But the mere fact that there was a hammerhead, that there was a claw, that there was a crowbar in this tool, that is functional, and the mere fact that you have that can't be a basis for infringement. Same thing with the Ozond case that this court had, involving the very issue of what is functional versus what is ornamental. It's an either-or question because it really seems to me that there are both elements to this empty base, that it clearly can't go in the sense that you can mix and match and put your own makeup in. But it has some ornamental designs, too. I mean, the mix and match doesn't require a completely empty base. It could require one divider down the middle. It could be done in a number of different ways to get the same function. So there's some, at least, ornamental aspect to the fact that it's completely empty. I would respectfully disagree with that because if you start putting any dividers in there, all of a sudden you're limiting the ability to customize and put whatever cosmetics you want into the space. Here they're completely devoid of any dividers. Perhaps if there was a unique pattern to some dividers inside but still left some room for customization. That might be different. That's exactly my point. If you have a big square and you put a line down the middle and now have two smaller squares, those are still customizable. They're less so because there's less space and the way things work. But that's a design choice, isn't it? To put one line down the middle instead of leaving it completely open. It's a design choice for a functional purpose so that you can have separation between two items that you're putting in there. Here, the design choice was, again, for function to leave it completely open so you can put whatever you'd like in there. The other case I was going to mention was the Ozon case. That involved a football that had a tail and feathers on it so you could throw it farther than a normal football. This court said those elements, the tail and the feathers, those are functional. But in that case, that's an odd case because then they did consider some aspects of the fin for purpose because some aspects of the design of the fin in the infringement analysis. That was a case where they split it up and said, even though it's functional, there's still a design aspect to this functional element and we're going to consider that. And that's no different than the handle in the Stanley Works case, the Richardson one. But there, the fins went up onto the football a little bit. And so even though it's functional, you can have an ornamental element. But here, we have the absence of any ornamental element. We have a pure functional element, a clear top and an empty base. Because of that, the district court was correct in factoring those elements out and in the absence of that, determining that there was no basis for infringement. Thank you. Mr. Katz, we'll give you a couple minutes. Thank you. I just wanted to dispute three points. In terms of MAC asking Z products, why do we infringe? That was discussed on page 27 of our brief and that was another mistake that the district court made. The district court looked at the interrogatory responses and chose the wrong ones, basically. The correct interrogatory response was for number seven and our claim was that the MAC palette embodies the overall visual impression claimed in D-642-743. The second point I want to bring up is evidence of confusion. If we just look at the ordinary observers that are out there in the marketplace, we provided in the short amount of time that we had for summary judgment ample evidence of confusion in the marketplace. That's in the appendix at A-743-798. The problem was that once a plaintiff does that, the district court can always come back and say, well, they were confused for other reasons. They were confused for reasons that I factor out. And that's what makes this very difficult in summary judgment. We can't anticipate what the district court is going to factor out. Nevertheless, these ordinary purchasers have documented a fair amount of confusion, much confusion in the marketplace. The third point I want to bring up is with regard to odds-on and to Richardson. The individual design elements were not factored out. It was the overall configuration. In other words, the idea of a football with fins as a general configuration was not protectable. In Richardson, the demolition tool as a collection of tools by itself was not protectable. However, in Richardson, the court still went and looked at all the elements. Didn't go and factor out the hammerhead. Didn't factor out the handle. Didn't factor out the claw. Just factored out the overall configuration. We're not claiming the overall configuration. The district court erred by factoring most things out. Thank you. We thank both counsel. The case is submitted.